A. S. GALLIHER *v.* M. J. GALLIHER *et al.*

1. BILLS AND NOTES. *Assignee.  Set off.  Breach of covenant.*  A demand arising· from the breach of a covenant against encumbrances is the subject of set off, and will, under the Code, sec. 2918, attach to a note held by the warrantor as payee, and will follow it into the hands of an assignee, unless he receive it before maturity in due course of trade.

2. SAME.  *Assignee.  Due course of trade.  Subrogation.*  An assignee, who receives a promissory note of a third person before maturity, in consideration of the sale to the assignor of a lot of land, and gives a bond to the assignor to make him a deed when the note is collected or paid, is an assignee in due course of trade; but the maker of the note becomes thereby a security for the assignor, and will be entitled to be subrogated to the lien of the vendor on the land, and, the payee being insolvent, to have the land sold for his indemnity in advance of the payment of the debt.

Galliher *v.* Galliher.

3. SAME. *Surety. Marshaling securities.* The surety would also be entitled to marshal the creditor's securities so as to compel him to go first upon the security in which the surety has no lien or equity.

FROM SULLIVAN.

Appeal from the Chancery Court at Blountville. H. C. SMITH, Ch.

W. V. DEADERICK and W. D. McCROSKEY for complainant.

N. M. TAYLOR and E. C. REEVES for defendants.

COOPER, J., delivered the opinion of the court.

Bill against the payee and his assignees of two promissory notes, upon which suits had been brought by the assignees, to have the benefit of a set off and equity as against the assignor. The chancellor, upon final hearing, granted the relief sought, and the assignees appealed.

The defendant, M. J. Galliher, and one G. W. Sells, were the owners of a tract of land as partners. On the 16th of November, 1860, Sells sold his half of the land to M. J. Galliher in consideration of the payment by Galliher of several debts specially mentioned, amounting to about $1,410, for the payment of which a lien was retained on the land. On February 17, 1863, M. J. Galliher sold the entire tract to C. Galliher, the intestate and father of complainant, for $3,500, of which the purchaser paid at the time $1,800, and executed his note to the vendor, due at twelve months, for $1,700. On April 30,

Galliher *v.* Galliher.

1863, C. Galliher sold to M. J. Galliher, giving him a bond for title, a tract of land in the State of Virginia for $4,000, of which M. J. Galliher says he "paid $2,500 down," and gave his note at eight months for $1,500. This note is produced and filed by M. J. Galliher, and shows various payments, and the receipt by C. Galliher of a due bill for $35 in full payment of the balance due, dated May 27, 1867. The due bill or note for $35 is also produced by M. J. Galliher, which recites on its face that it is for a balance on a note of $1,500 for land, due 30th of December, 1863, and has written across it "settled in full October 18, 1869." On the 17th of December, 1863, M. J. Galliher conveyed to C. Galliher the land sold on the 17th of February, 1863, by deed in fee, reciting the payment of the consideration of $3,500, and containing a warranty against encumbrances, and a general warranty of title. On October 4, 1869, C. Galliher and M. J. Galliher had a settlement, in which the sale of the Virginia land was cancelled, and C. Galliher was brought in debt to M. J. Galliher in the sum of $1,800, for which he executed his three notes of that date at six, twelve and eighteen months, with complainant as surety. The first of these notes was paid in part by C. Galliher, and in part by complainant, A. S. Galliher, as administrator of his father, who died January 17, 1870. On May 24, 1871, M. J. Galliher assigned the twelve months note to the defendants, J. M. Carr and W. H. Taylor. On January 26, 1871, he assigned the note falling due at eighteen months to the

defendants, J. M. Carr, W. H. Taylor and Samuel H. Miller. The bill was filed to enjoin the collection of these two notes, on which suits had been brought by the respective assignees. The bill stated that a bill had been filed, and was then being prosecuted, to enforce the lien reserved on the face of the deed of G. W. Sells to M. J. Galliher for one-half of the land which had been sold and conveyed by M. J. Galliher to C. Galliher, that M. J. Galliher had in his conveyance warranted against encumbrances, and was now insolvent; that the $600 notes were given, in effect, for the purchase money of the land, that the assignees were not holders in due course of trade, and that complainant, who sued as administrator of C. Galliher, as well as in his own right, was entitled to set off the encumbrance under the Sells deed against said notes.

The theory of the bill is that when, on April 30, 1863, C. Galliher sold the Virginia land to M. J. Galliher, he received in part payment therefor his own note for $1,700 given for the land in Tennessee, and that when, on October 4, 1869, the sale of the Virginia land was cancelled, the amount of $1,800 then found due from C. Galliher to M. J. Galliher was, in reality, the old debt of $1,700 revived with interest. The defendant, M. J. Galliher, in his answer, denies that there was any connection between the two transactions, and the respective considerations. His position is that he paid the entire consideration of the Virginia land, and that the balance found in his favor in the settlement of October 4, 1869, con-

sisted of the payments thus made.  The language of his answer is: "Respondent paid all of said note of $4,000 except $35." In his deposition he says: "I paid $2,500 down, and executed my note for $1,500 payable in eight months." But he does not show when or how the note of C. Galliher for $1,700, given in the trade for the Tennessee land, was paid. In fact, he says nothing about this note. It would be somewhat remarkable if in the trade two months thereafter, he paid $2,500 in money, while holding C. Galliher's note for $1,700. He does not say he paid in money, although that would be a fair inference from the language used. The complainant says that he was present at the settlement of October 4, 1869, and that it was agreed that only one of the $600 notes was to, be paid until the Sells lien was settled. He says also that the $1,700 note was taken up by his father in the sale of the Virginia land. If, in fact, the $2,500 which the defendant Galliher says he "paid down" in that transaction consisted in part of the note for $1,700, and, upon the rescission of the trade, the balance of debt against C. Galliher was for about the same amount, it would be difficult to resist the conclusion to which the chancellor seems to have come, that this indebtedness was in reality the unpaid purchase money for the Tennessee land.

But it is unnecessary to determine the point. The deed of M. J. Galliher conveying the Tennessee land to C. Galliher, contains, as we have seen, a covenant against encumbrances. That covenant was broken as soon as the deed was made, if there then existed any

encumbrance on the land, and the right of action passed, on the death of C. Galliher, to his personal representative: *Kenney* v. *Norton*, 10 Heis., 384. The debts for which a lien was reserved upon one-half of the land in the deed from Sells to M. J. Galliher constituted a then existing encumbrance, the amount of which has been judicially ascertained, since the filing of the bill in this case, in the suit brought to enforce the lien, the proceedings in which are made a part of this record. The demand arising on the breach of the covenant against encumbrances is in the nature of a debt reducible to a certain pecuniary amount, and recoverable in an action *ex contractu*. It is consequently the subject of set off: *Lowry* v. *Hawes*, 10 Heis., 688; *Moore* v. *Weir*, 3 Sneed, 46. And such a right of set off is an equity which, under the Code, sec. 2918, attached to the notes in the hands of the original party, and followed them into the hands of an assignee unless he received them before maturity in due course of trade: *Gatewood* v. *Denton*, 3 Head, 381; *Moore* v. *Weir*, 3 Sneed, 46; *Litterer* v. *Berry*, 4 Lea, 193.

One of the notes for $600, falling due twelve months from October 4, 1869, was not assigned until May 24, 1871, and the assignees were not holders in due course of trade so as to be protected from the set off.

The other note was assigned before maturity. The note itself as copied in the transcript of the suit at law upon it does not show an assignment. But the suit was brought and prosecuted to judgment in the

name of the assignees, and the note is described in the declaration as having been assigned with a guaranty of payment to the payee. The bill also states that the payee has assigned the note recently "by writing endorsed thereon." The assignees sold to M. J. Galliher a house and lot, "and received from him" the note, and gave him a bond to make him a deed "when the note shall be collected or paid, retaining a lien on said property to secure the purchase money." The assignees were certainly holders of the note in due course of trade, having given for it their property, and taken an assignment of it before maturity: *Kimbro* v. *Lytle*, 10 Yer., 417. The note was received in direct payment for the land, the condition of the title bond to make a deed "when the note shall be collected and paid," being the usual form in such cases.

But, although it cannot be said that the note was taken as collateral security for the purchase money as argued, yet the same result will be attained by the adjustment of the rights of the parties upon well settled equitable principles. By reason of the equities growing out of the existence of mutual debts, the complainant and his father became, in effect, the sureties of M. J. Galliher in the trade for the house and lot, and entitled to be subrogated to any security which the vendors, the assignees of the note may have for the same debt. Equity looks to the substance of transactions, and the actual relation of the parties: *Snyder* v. *Summers*, 1 Lea, 534. And the right of subrogation exists by reason of the insolvency of M.

J. Galliher, before the sureties have paid the debt: *Henry* v. *Compton,* 2 Head, 549; *Saylors* v. *Saylors,* 3 Heis., 532. The complainant, as administrator and individually, is therefore entitled to be subrogated to the lien reserved on the lot for the payment of the purchase money, and to have the land sold for his indemnity. The justice of the case as between complainant and the defendant Galliher will be thus attained, without in the least affecting injuriously the rights of the assignees of the note. The complainant is equally entitled to relief upon the ground that the assignees have two securities for the payment of their debt, and the complainant only one. The pleadings are, perhaps, not shaped with a view to carry out this ground of relief, but the right could be declared, and the cause remanded with a view to an amendment of the pleadings if necessary. But the other ground is sufficient for the purposes of this case.

The chancellor's decree will therefore be modified in accordance with the conclusions of this opinion, and the defendants will pay half the costs of this court, and the complainant the other half. The costs below will be paid as ordered by the chancellor.